# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WILSON DELGADO RODRÍGUEZ,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**MEGAN J. BRENNAN, et al.,**<br><br>    **Defendants.** | **Civil No. 18-1489 (ADC)** |

## OPINION & ORDER

Defendants Megan J. Brennan, Postmaster General of the United States Postal Service; Tammy L. Whitcomb, Acting Inspector General of the United States Postal Service Officer of Inspector General ("OIG"); and United States Department of Justice ("DOJ")[1] (collectively, "defendants") filed a motion to dismiss. **ECF No. 10**. Plaintiff Wilson Delgado-Rodríguez ("Delgado") opposed the motion. **ECF No. 13**. Defendants replied. **ECF No. 16**. For the following reasons, the motion to dismiss is **GRANTED**. **ECF No. 10.**

---

[1] According to plaintiff, the named co-defendant DOJ is included in order "to comply with Procedural rules." **ECF No. 1** at 3. Plaintiff, however, did not specify which procedural rule states that the DOJ must be a defendant. **ECF No. 10** at n.1. The Court notes that plaintiffs served the summons to the U.S. Attorney's office in Puerto Rico. **ECF No. 6**. However, plaintiff does not assert any claims for relief against the DOJ. Considering the foregoing and the Court's Opinion, there are no grounds for the DOJ to remain a defendant in this suit. *See* Fed. R. Civ. P. 12(b)(6); *see also Lane v. Pena*, 518 U.S. 187, 199 (1996); *Morales-Melecio v. United States* (*Dept. of Health & Human Servs.*), 890 F.3d 361, 366 (1st Cir. 2018) ("Absent an explicit waiver, the United States is safeguarded from suit in any court in accordance with its sovereign immunity."). Accordingly, the complaint is dismissed against co-defendant DOJ.

I. **Background**

On January 30, 2018, the United States Postal Service ("USPS") Postmaster Guillermo Rivera ("Postmaster Rivera") suspended Delgado from his employment as Lead Sales and Service Associate at the USPS San Sebastián Post Office, alleging that there had been a continuous shortage of money from Delgado's cash register. **ECF No. 1** at 4; **ECF No. 16-2**. On February 6, 2018, San Sebastián Post Officer Supervisor Samuel Rodríguez ("USPS Supervisor Rodríguez") placed Delgado on "Emergency Placement Off-Duty Status" because he was worried that if Delgado remained on duty it could result in a greater loss of fund for the Postal Service. **ECF No. 1** at 4. Moreover, the Office of Inspector General ("OIG") was undertaking an investigation into Delgado's cash register accounting. *Id.* Delgado filed a grievance with the American Postal Workers Union AFL-CIO ("APWU") to contest his placement on off-duty status without pay. *Id.*

Between February 26-27, 2018, Delgado received multiple calls from both from USPS Supervisor Rodríguez and OIG Agent Pablo Velásquez ("OIG Velásquez") telling him to report to OIG's office at the General Post Office ("GPO") in San Juan on February 28, 2018. *Id.* at 4-5. Delgado proceeded to call his Union Representative Guillermo Aviles ("Avilés") who agreed to represent Delgado at the meeting the following day. *Id.* at 5. On February 28, 2018, Delgado appeared at the specified location but Avilés "failed to show and told him last minute that he could not represent him." Instead, Union Representative Omar Ortíz ("Ortíz"), who Delgado had never met before, represented him. *Id.* at 5. Delgado was taken to an interrogation room

where he met with Ortíz. However, they were not given enough time to consult with each other since OIG Velásquez and Mitchel Rivera[2] "burst into the room." *Id.* Before the meeting officially began, OIG Velásquez "approached the plaintiff[,] invaded his personal space[,] and put a cellphone's flashlight into [Delgado's] face and asked if he was on drugs." *Id.* Ortíz allegedly did not "assert any of [Delgado's] rights at that time." *Id.* The meeting went on for approximately five hours. *Id.* According to Delgado, the interrogators were hostile towards him; they would repeat the question while changing the wording to confuse him. *Id.* Throughout the meeting, Ortíz allegedly did not advocate nor defend his client. OIG Velásquez then asked Delgado to write a narrative and describe the events that had occurred on January 30, 2018 which led to his work suspension. *Id.* To conclude the meeting, OIG Velásquez allegedly coerced Delgado to sign several statements regarding the meeting. *Id.* at 6.

Several months later, USPS Supervisor Rodríguez scheduled a "Pre-Disciplinary Interview" for May 29, 2018 at the San Sebastián Post Office. Later, the interview was rescheduled for May 31, 2018 at the Mayaguez Post Office. *Id.* at 6. Ultimately, the interview scheduled for May 31, 2018 was cancelled because "the Post[m]aster did not approve Union time", thus the union representative told Delgado that the meeting constituted a violation of the union agreement. Therefore, they both stood up and left. *Id.* The "Pre-Disciplinary Interview" allegedly never occurred. According to Section 16 of the Collective Bargaining Agreement

---

[2] Aside from this mention in passing, Plaintiff does not provide additional information as to this individual's position or role as to the allegations in the complaint.

("CBA") between USPS and APWU, for any such reasons[3] an employee is disciplined or discharged they "shall be subject to the grievance-arbitration procedure provided for" in the agreement. **ECF No. 16-1.**

On June 18, 2018, Rivera and José A. Marengo sent Delgado a Notice of Removal for improper conduct. **ECF No. 1** at 6. The Notice of Removal included findings regarding Delgado's "improper" conduct and indicated that Delgado had not reported to the "Pre-Disciplinary Interviews" scheduled on May 29, 2018 and May 30, 2018. *Id.* The Notice of Removal was effective as of thirty calendar days from the receipt of the same. *Id.* Delgado subsequently filed a grievance that is currently pending arbitration. **ECF No. 10** at 3. Delgado claims he has been incorrectly accused of misusing government funds and has been a victim of an investigation where his due process rights were not protected. **ECF No. 1** at 7. Delgado brings claims of Due Process Violations under the Fifth Amendment and the U.S. Constitution, and Deprivation of Rights pursuant to 42 U.S.C. § 1983, and seeks declaratory judgment, back pay, and compensatory damages. *Id.* at 9-11.

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the Court lacks subject matter jurisdiction and that Delgado failed to exhaust the CBA's grievance procedure. **ECF No. 10.**

---

[3] Section 16 of the CBA states, "No Employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage…, failure to perform work as requested." **ECF No. 16-1.**

## II. Legal Standard

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing a complaint under Rule 12(b)(1), courts "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff[s] the benefit of all reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (alteration in original) (citation and internal quotation marks omitted). A complaint, so construed, must be dismissed under Rule 12(b)(1) if the Court lacks subject-matter jurisdiction to adjudicate its claims.

Courts also favorably construe a complaint when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action" and "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (additional citations and internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

**III. Analysis**

Delgado alleges a deprivation of rights pursuant to 42 U.S.C. § 1983. **ECF. No. 1** at 9. He claims that defendants' responsible management officials ("RMO"), as employees of USPS, are liable for Delgado's due process rights violation and that "USPS failed to prevent these violations." *Id.* Moreover, Plaintiff asserts that defendants interfered with his "property right to his job and pay" when he was suspended. *Id.* at 9-10. Lastly, Plaintiff argues that while engaged in such employment actions, "the defendants acted under color of federal law in the course and scope of employment." *Id.* at 9.

In their motion to dismiss, defendants' arguments are twofold: 1) this Court lacks subject matter jurisdiction because the USPS and its OIG have have not waived their sovereign immunity, its employees acted under the color of federal law and thus, are not subject to § 1983 liability[4]; and 2) plaintiff failed to exhaust the administrative remedies provided by the CBA between the USPS and APWU insofar as the two grievance procedures filed by plaintiff are still pending in arbitration. **ECF No. 10** at 5-11.

**A. Dismissal of plaintiff's § 1983 claims is proper**

It is well settled that under 42 USC § 1983, a plaintiff can bring a "private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law."[5] *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011) (citing

---

[4] Alternatively, they argue that plaintiff did not set forth a Bivens claim.
[5] The First Circuit noted that section 1983's "under color of state law" requirement is the functional equivalent of the Fourteenth Amendment's "state action" requirement. *Santiago v. Puerto Rico,* 655 F.3d 61, 68 (1st Cir. 2011).

*Redondo-Borges v. U.S. Dep't of HUD*, 421 F.3d 1, 7 (1st Cir. 2005)); *see also Natal-Rosario v. Puerto Rico Police Dept.*, 639 F. Supp. 2d 174, 180 (D.P.R. May 18, 2009). However, it cannot form the basis of an action against individuals acting under color of federal law. *Rogers v. Vicuna*, 264 F.3d 1, 4, (1st Cir. 2001). There is no dispute regarding Plaintiff's allegations that defendants acted under color of federal law. **ECF No. 1** at 2-3. As such, Plaintiff's claims under § 1983 necessarily fail.

### B. Plaintiff does not set forth a *Bivens* claim

Construing the complaint in the light most favorable to Delgado, the Court may infer that Plaintiff constructively argues a *Bivens* claim arising out of defendants' purported violations of procedural and substantive due process rights. **ECF No. 1** at 9-10. Specifically, Delgado alleges that he was not provided with adequate procedural due process as outlined in the CBA between the USPS and the APWU. *Id.* He further contends that: a) the defendants failed to release the evidence they had against him, b) he was not given proper representation, c) he was improperly suspended without pay, and d) he was "coerced [into giving] adverse statements under duress" during the February 28, 2018 meeting. *Id.*[6]

---

[6] Contrarily, defendants argue that Delgado had a union representative present during the February 28, 2019 meeting and Delgado could have requested to talk to Ortíz in private at any moment. **ECF No. 16** at 5. Moreover, they point out that plaintiff was advised of his right to an attorney, which he voluntarily waived; and he otherwise voluntarily attended and participated in the interview upon full disclosure and waiver of his Miranda rights. **ECF No. 16** at 5. Thus, defendants argue that any allegations of due process violations should have been raised in the grievance process. *Id.*

The *Bivens* doctrine allows constitutional claims against federal officials, in their individual capacities, for actions taken under color of federal law. *McCloskey v. Mueller*, 446 F.3d 262, 271-272 (1st Cir. 2006) (citing *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971)); *see also Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000). Nonetheless, it is well settled that a *Bivens* action will not lie against an agency of the federal government. *Riley*, 209 F.3d at 28 (citing *FDIC v. Meyer*, 510 U.S. 471, 486, 127 L. Ed. 2d 308, 114 S. Ct. 996 (1994)). It "can only be brought against federal officials in their individual capacities. Even then, the plaintiff must state a claim for direct rather than vicarious liability; respondeat superior is not a viable theory of Bivens liability." *Riley*, 209 F.3d at 28 (first citing *Bibeau v. Pacific Northwest Research Found*, 188 F.3d 1105, 1114 (9th Cir. 1998); then citing *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998); then citing *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997)); *see also Tapia-Tapia v. Potter*, 322 F.3d 742, 746 (1st Cir. 2003) (finding that appellant did not have a viable Bivens claim against the Postmaster General since he was sued only in his official capacity and Bivens suits only can be brought against federal officers in their individual capacities).

At the outset, the Court notes that Delgado's Complaint fails to clearly state that any of the defendants are sued in their individual capacity.[7] In fact, plaintiff's allegations consistently refer to the defendants acting in their "official capacities", "under color of federal law" and within the "course and scope of their employment". *See* **ECF No. 1** at 1-3. Since *Bivens* claims

---

[7] Plaintiff only avers that all "individual defendants" are jointly liable. **ECF No. 1** at 3.

only prosper as to federal officials in their individual capacities, this raises the question as to whether the complaint must explicitly specify the capacity in which each official is sued.

In cases where the complaint does not expressly provide whether defendant is sued in his individual as well as official capacity, the First Circuit adopted the "course of proceedings" test, finding it "appropriately balances a defendant's need for fair notice of potential personal liability against a plaintiff's need for the flexibility to develop his or her case as the unfolding events of litigation warrant." *See cf. Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004).[8] In so doing however, the Court advised plaintiffs to be specific in the complaint since a "plaintiff who leaves the issue murky in the complaint runs considerable risks under the doctrine" there adopted. *Id.* Albeit *Powell* dealt with a § 1983 claim against state officials, the Court's holding is noteworthy in this case.

Considering *Powell*'s holding, the Court finds that plaintiff did not sue defendants individually. Namely, he does not seek punitive damages[9] or any remedies against the defendants in their individual capacities. Most importantly, there are no allegations suggesting that they acted outside the scope of their official duties. Conversely, plaintiff consistently pleads

---

[8] Case law points to various approaches among districts. *See cf. Charron v. Picano*, 811 F. Supp. 768, 772 (R.I. 1993) (noting that "[t]he Circuits are divided with respect to the consequences of a complaint's failure to specify the capacity in which a state official is sued. The Sixth and Eighth Circuits adhere to the view that a suit against a state official should not be construed as a personal capacity suit unless such a claim is clearly set forth in the pleadings…On the other hand, the Third, Seventh, Tenth and Eleventh Circuits look to the course of the proceedings to make that determination.") (citations omitted).

[9] A prayer for punitive damages can only be brought against defendant governmental officials who were sued in their individual capacities and is thus indicative of a plaintiff's intent to pursue claims against the officials in their individual capacity. *See Powell v. Alexander*, 391 F.3d 1, 23 (1st Cir. 2004).

that defendants acted within their official capacities and within the course and scope of their employment. **ECF No. 1** at 2, 3, 9; *see cf. Charron v. Picano*, 811 F. Supp. 768, 772 (R.I. 1993) (finding that 1983 claim failed even under the "court of proceedings standard", since the complaint failed to set forth facts or allegations suggesting defendant acted outside the scope of his official duties). For these reasons, any possible *Bivens* claim fails.

Nevertheless, even if plaintiff's complaint could somehow be interpreted to include claims against defendants in their individual capacity, *Bivens'* applicability in this case is barred on other grounds. The Supreme Court held that *Bivens* claims should be precluded when there are "special factors counseling hesitation in the absence of affirmative action by Congress," or when "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." *Herbst v. United States Postal Serv.*, 953 F. Supp. 2d 463, 467 (E.D.N.Y. 2013) (citing *Carlson v. Green* 446 U.S. 14, 18, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980)). Indeed, "one of the special factors that counsels hesitation in permitting a Bivens remedy is the 'comprehensiveness of available statutory schemes' to remedy a plaintiff's injury." *Id.* (citing *Arar v. Ashcroft*, 585 F.3d 559, 573 (2d Cir. 2009)).

Through the Postal Reorganization Act ("PRA"), Congress created a remedial scheme that outlines the procedures for "aggrieved postal workers and prevents them from bringing *Bivens* claims." *Id.* Under the PRA, USPS has "adopt[ed] a comprehensive binding arbitration provision", which includes a grievance procedure, "in its collective bargaining agreements

between the USPS and its employees where constitutional claims arising from employment issues are brought." *Id.* (citing *Pipkin v. United States Postal Serv.*, 951 F.2d 272, 275 (10th Cir. 1991)). Insofar as the remedial scheme prescribed by the PRA constitutes an exclusive "comprehensive statutory scheme," to address plaintiff's constitutional claims arising from his employment with the USPS, plaintiff is barred from pursuing a *Bivens* claim against defendants. *Id.* (citing *Turner v. Holbrook*, 278 F.3d 754, 757-58 (8th Cir. 2002).

Additionally, Plaintiff cites no authority for an award of damages against defendants in their official capacities. Such an action would be the equivalent of one against the United States. *See Sanchez-Mariani v. Ellingwood*, 691 F.2d 592, 596 (1st Cir. 1982) (citing *Hawaii v. Gordon*, 373 U.S. 57, 58, 10 L. Ed. 2d 191, 83 S. Ct. 1052 (1963); *see cf. Hafer v. Melo*, 502 U.S. 21, 25 (1991) (holding that suits against state officials in their official capacity should be treated as suits against the State). Since plaintiff has not set forth any applicable waiver of immunity and defendants have not waived sovereign immunity[10], the Court lacks subject matter jurisdiction in this case and dismissal of the claims is proper on these grounds.

---

[10] The United States Postal Service under the Postal Reorganization Act ("PRA") is generally allowed to "sue and be sued", a clause that "should be liberally construed." *Franchise Tax Bd. of California v. United States Postal Service*, 467 U.S. 512, 520 (1984). However, *Meyer* specifically bars *Bivens* claims against any federal agency, even those who have "broadly waived immunity." *Tapia-Tapia v. Potter*, 322 F. 3d 742, 745-46 (1st Cir. 2003) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994)). In fact, *Potter* expressly held that defendants, Postal Service were entitled to sovereign immunity under Bivens claim.

### C. Plaintiff failed to exhaust administrative remedies

In further support of their request for dismissal, defendants argue that plaintiff failed to exhaust the mandatory grievance procedures established by Article 15 of the CBA. Namely, they note that Grievance 18-0321 (as to the Emergency Placement in Off-Duty Status) and Grievance 18-1382 (as to the Notice of Removal from the Postal Service for improper conduct), filed by plaintiff, are both pending arbitration. *See* **ECF No. 10** at 2-3, 6-11. They further contend that plaintiff's due process violation claims – based on the actions of OIG agents - should be addressed through the grievance arbitration process and properly exhausted at that level prior to filing suit in court. **ECF No. 16** at 3. The Court, however, need not delve into this last point at this juncture since plaintiff has clearly failed to exhaust administrative prior to filing the instant suit.

Where a CBA establishes a grievance procedure, an "employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement". *Vaca v. Sipes,* 386 U.S. 171, 184 (1967); s*ee also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987) (finding that albeit courts have jurisdiction to enforce collective-bargaining contracts, where the contract provides grievance and arbitration procedures, those procedures must first be exhausted). A plaintiff has failed to exhaust his or her administrative remedies and may not seek judicial relief when an arbitration decision has not been issued or reached as to an issue from which plaintiff seeks redress in court. *Vaca v. Sipes, 386 U.S. 184; see also Suárez v. United States Postal Service*, 75 Fed. Appx. 790, 791-92 (1st Cir. 2003) (finding that

plaintiff could not seek redress in the courts absent an arbitration decision regarding the amount or timeliness of back pay as argued in the grievance procedure).

The CBA between USPS and APWO includes a grievance section where employees can file grievances regarding employment disputes. *See* **ECF No. 16-1** at 2.[11] As stated by plaintiff in the Complaint, he filed two grievances pursuant to the CBA guidelines, one in response to the Emergency Placement in Off-Duty Status and the other in response to his Notice of Removal, both of which are still pending arbitration. *See* **ECF No. 10** at 3. Case law is clear that an employee may not resort to the courts before fully exhausting the grievance procedures outlined in the applicable CBA. *See Vaca*, 386 U.S. at 184; *Suárez*, 75 Fed. Appx. at 791-92. **ECF No. 10** at 3. Since Delgado failed to exhaust his administrative remedies, dismissal is also proper on these grounds.

## IV. Conclusion

Defendants' motion to dismiss is **GRANTED**. **ECF No. 10**. The case is hereby dismissed with prejudice. Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 18th day of September, 2019.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

[11] The CBA agreement is a public record and available for review at the America Postal Workers Union website.